UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BENJAMIN RIVERA,

                    Petitioner,

          -vs-                              **No. 14-CV-6300(MAT)**
                                           **DECISION AND ORDER**

DALE ARTUS, Superintendent,
Attica Correctional Facility,

                    Respondent.

---

## I.   Introduction

*Pro se* petitioner Benjamin Rivera ("petitioner" or "Rivera")
seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the
basis that he is being unconstitutionally detained in Respondent's
custody.  Petitioner is incarcerated pursuant to a judgment entered
against him on July 21, 1989, in Monroe County Court of New York
State ("Monroe County Court"), following a jury verdict convicting
him of murder in the second degree. Petitioner was sentenced to an
indeterminate prison term of 18 years to life.

Petitioner asserts that the following claims in his petition:
(1) ineffective assistance of trial counsel; (2) ineffective
assistance of appellate counsel; and (3) failure by the prosecution
to produce exculpatory evidence.  For the reasons discussed below,
the Court finds that petitioner has not shown he is entitled to
relief.

## II.   Background

On October 16, 1988, petitioner, George Rios ("Rios"), Heriberto Mateo ("Mateo"), and Jose Vargas ("Vargas") traveled together to a home on Jay Street in Rochester, where they encountered Willie Cruz. Cruz testified at petitioner's trial that a blue Chrysler New Yorker parked in front of the driveway and that three men, including petitioner, got out. According to Cruz, Rios brandished a firearm and demand that Cruz hand over his money and drugs. Cruz emptied his pockets, demonstrating that he had no money or drugs on him. Michael Laskey ("Laskey") and Ivan McIntyre ("McIntyre"), friends of Cruz's who were inside the house, witnessed this interaction and came outside to assist Cruz. Cruz testified at trial that McIntyre asked Rios what was going on, at which point petitioner told Rios to shoot McIntyre, which Rios in fact did. McIntyre died as a result of the gunshot wound. Cruz had known petitioner for approximately six years and identified him at trial as the individual who told Rios to shoot McIntyre.

Aundrea Ownes ("Ownes") was called as a defense witness at trial. She testified that on October 16, 1988 at roughly 12:30 a.m. she was driving home from a friend's house when she stopped at the traffic light on the corner of Jay and Saxton Streets. Ownes further testified that she saw a "Spanish" man with a light complexion, wearing jeans and sneakers, walking down the street towards Jay Street. Ownes then heard a loud noise that sounded like a gunshot, whereafter the man she had seen previously ran into

the middle of the street and waved down and entered a blue Chrysler New Yorker, which drove away. At trial, petitioner's counsel, Maureen Pineau, Esq. ("trial counsel") argued that petitioner was the man Ownes had seen and that Ownes' testimony showed Petitioner was not present when McIntyre was murdered.

Trial counsel also called Peter Kristal, Esq. ("Kristal") as a witness. Kristal, who had formerly served as Cruz's attorney, testified that Cruz had told him he was afraid of Vargas and did not want to say anything about his involvement in the crime. Kristal further testified that Cruz had made no statements to him about petitioner.

Petitioner was charged with, and the trial court instructed the jury as to the elements of, both second-degree murder (intentional murder) and second-degree murder (felony murder). The jury found petitioner not guilty on the intentional murder charge and guilty on the felony murder charge. On June 21, 1989, petitioner was sentenced to an indeterminate prison term of 18 years to life.

Trial counsel represented petitioner on direct appeal before the Appellate Division, Fourth Department (the "Appellate Division"). In her brief, she argued that (1) the evidence was legally insufficient to support petitioner's conviction, (2) the verdict was against the weight of the evidence, because Cruz's testimony was not credible, (3) the trial court's jury charge

-3-

deprived petitioner of a fair trial, (4) the cumulative effect of various evidentiary rulings made by the trial court deprived petitioner of a fair trial, and (5) petitioner's sentence should be modified in the interests of judgment. The Appellate Division unanimously affirmed petitioner's judgment of conviction by Memorandum and Order dated February 1, 1991. *See People v. Rivera*, 170 A.D.2d 962 (4th Dep't 1991). Petitioner sought leave to appeal his claims based on legal sufficiency and the jury charge before the New York Court of Appeals (the "Court of Appeals"), which denied his request on May 7, 1991.

On April 6, 2006, petitioner filed a *pro se* motion pursuant to New York Criminal Procedure Law § 440.10. In his *pro se* motion, petitioner argued that trial counsel was ineffective for having failed to call co-defendants Mateo and Rios as witnesses at trial. Petitioner submitted with his motion an affidavit from Rios dated July 28, 2003, in which Rios stated that on October 16, 1988, he, petitioner, and Vargas were passengers in a stolen vehicle driven by Mateo. Rios further stated that he spotted Cruz, who he knew to be a drug dealer, and decided to rob him. According to Rios' affidavit, he announced his robbery plan to his companions, and petitioner tried to dissuade him from going through with it, at which point Rios told petitioner that he should walk to the corner if he was not "down with it." Rios' affidavit goes on to state that as he and Vargas were walking away from Cruz, who had no money

-4-

or drugs, two individuals approached them, and one had his hand at his waist as though he had a gun. At that point, Rios stated, Vargas told Rios to shoot the man, and Rios did, whereupon he and Vargas ran back to the car and Mateo drove away, stopping to pick petitioner up at the corner. Rios' affidavit states that no one acting on petitioner's behalf had previously approached him to find out what he knew and that, had he been asked to testify, he would have testified to the statements set forth in the affidavit.

Petitioner also attached to his *pro se* motion a copy of Mateo's plea allocution. In his plea allocution, Mateo stated that on October 16, 1988, he drove Rios and Vargas to petitioner's house in a stolen car. According to Mateo, petitioner retrieved a duffle bag that had a gun in it, and Mateo then drove to Jay Street. Mateo further stated that, once they arrived at Jay Street, Vargas announced that he intended to commit a robbery and petitioner walked to the street corner. Mateo went on to state that an individual had jumped out and charged at Rios, that Vargas told Rios to shoot the individual in question, and that Rios did shoot him. Rios and Vargas then re-entered the car, and Mateo pulled around the corner to pick up petitioner. All four of them (petitioner, Mateo, Vargas, and Rios) then drove to a house on Hoelzter Street, where Rios and Vargas gave the gun to an individual Mateo did not know.

Mateo had previously given a statement to the police on October 16, 1988, which differed in material respects from his plea allocution. In his original statement, Mateo told police that he stole the car at issue in Henrietta, then returned to Rochester, where he, petitioner, Vargas, and Rios devised a plan to rob a drug house. Mateo told the police that petitioner had offered the use of his gun to effectuate the robbery and that Mateo drove to petitioner's house where petitioner retrieved a gym bag containing a single barrel 12-gauge shotgun. The four companions then drove to Jay Street, looking for a drug house to rob. They agreed to target Cruz, whom they knew to be a drug dealer, as well as a green house they believed to be a drug house. Mateo told the police that petitioner, Vargas, and Rios chased Cruz to the rear of the property, at which point an individual exited and Rios shot him. Mateo stated that petitioner had already run from the scene by the time the individual who was shot fell to the ground and that he, Vargas, and Rios picked petitioner up on Saxton Street. Mateo further told the police that petitioner then directed him to the house on Hoelzter Street, where petitioner and Vargas gave the gun to a man, and petitioner told the man to hold onto it and that petitioner would be in touch.

After filing his *pro se* motion, petitioner obtained counsel, and filed a supplemental § 440.10 motion. In his supplemental motion, petitioner asserted that trial counsel was ineffective for

having sought a missing witness charge with respect to the People's failure to call Mateo rather than having called him as a witness, that the People violated the rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce exculpatory evidence (namely, Mateo's plea colloquy), and that newly discovered evidence (namely, Rios' July 28, 2003 affidavit) warranted vacating petitioner's conviction.

The Monroe County Court (Renzi, J.) held a hearing on petitioner's § 440.10 motion on December 8, 2006. At the hearing, in addition to the information contained in his affidavit, Rios testified that he had been friends with petitioner for most of his life and that, despite having had many court appearances with petitioner, he had never volunteered the information contained in his affidavit. It was not until 15 years later, when an investigator showed up "out of the blue" that Rios offered up his version of events.

Retired Rochester Police Department Investigator William Barnes ("Barnes") testified at the hearing before the Monroe County Court. Barnes stated that he had interviewed Rios on October 16, 1988. According to Barnes, Rios told him that Cruz owed petitioner money for heroin and that petitioner had driven Vargas, Mateo, and Rios to Jay Street. Rios further told Barnes that petitioner was armed with a shotgun and Vargas was armed with .45 caliber firearm. Rios went on to tell Barnes that, as they were walking up the

driveway of a house in order to rob Cruz, a man exited the house and petitioner shot him.

On March 2, 2007, the Monroe County Court issued a Decision and Order denying petitioner's § 440.10 motion. The Monroe County Court found that petitioner's ineffective assistance of counsel claim was procedurally barred for failure to raise it on direct appeal and that, in any event, trial counsel had provided a competent and effective defense. The Monroe County Court further found that petitioner's *Brady* claim lacked merit, inasmuch as the record showed that Mateo's plea colloquy was known to all parties at the time of petitioner's trial. Finally, the Monroe County Court denied petitioner's claim based on new evidence, finding that Rios was not a credible witness.

Petitioner filed a counseled motion for leave to appeal the Monroe County Court's decision on his § 440.10 motion. The Appellate Division granted petitioner's request on June 27, 2007.

On February 6, 2008, petitioner filed a *pro se* motion for writ of coram nobis. Petitioner argued that trial counsel was ineffective on direct appeal because (1) she had a conflict of interest, having represented him at trial and (2) she did not assert that she had been ineffective at trial by having failed to call Mateo as a witness, having failed to object to the trial court's charge as to reasonable doubt and as to the felony murder count, and having failed to object to the trial court responding to

-8-

a juror's question without first permitting the defense an opportunity to be heard. The Appellate Division subsequently issued an Order dated June 6, 2008, in which it found that petitioner's claim that trial counsel was ineffective for having failed to object to the trial court's instruction regarding the elements of felony murder was potentially meritorious, and accordingly vacated its February 1, 1991 order affirming petitioner's judgment of conviction and agreed to hear petitioner's appeal *de novo*.

The Appellate Division subsequently consolidated petitioner's § 440.10 appeal with the *de novo* appeal of his judgment of conviction. Gary Muldoon, Esq. ("appellate counsel") represented plaintiff in connection with the consolidated appeal, and filed a brief contending that (1) the trial court erred in instructing the jury with respect to felony murder, (2) the verdict was against the weight of the evidence, and (3) the Monroe County Court erred in failing to vacate petitioner's conviction, because trial counsel was ineffective when she failed to object to the trial court's instructions on felony murder and failed to interview or call Mateo. Petitioner filed a *pro se* supplemental brief in which he contended that the Monroe County Court erred in failing to vacate his conviction because trial counsel was ineffective, because the People violated *Brady*, and because of newly discovered evidence.

On March 25, 2011, the Appellate Division entered a Memorandum and Order in which it unanimously affirmed petitioner's judgment of conviction and the Monroe County Court's denial of his § 440.10 motion. The Appellate Division found that plaintiff had failed to preserve his arguments regarding the trial court's instructions on felony murder and response to the juror's question, and that the verdict was not against the weight of the evidence. The Appellate Division further found that trial counsel was not ineffective, that there was no *Brady* violation, and that petitioner's argument based on Rios' affidavit had not been brought with due diligence and was based on unreliable testimony that was insufficient to warrant vacatur. *See People v. Rivera*, 82 A.D.3d 1590. Petitioner filed a counseled request for leave to appeal the Appellate Division's decision on his consolidated appeal, and the Court of Appeals denied his request on June 8, 2011.

Petitioner filed a second *pro se* motion for a writ of error coram nobis on June 17, 2011. In this motion, petitioner contended that appellate counsel provided ineffective assistance because he did not argue that trial counsel was ineffective for having failed to object to the court's response to a juror's inquiry and having failed to object to the trial court's instructions on felony murder and reasonable doubt. The Appellate Division denied petitioner's motion on November 10, 2011. Petitioner filed a *pro se* motion for

leave to appeal, which the Court of Appeals denied on February 14, 2012.

On June 12, 2012, Petitioner filed a third *pro se* motion for a writ of error coram nobis. Petitioner argued that appellate counsel was ineffective for having failed to assert that trial counsel's failure to move to dismiss the felony murder charge on the ground that the evidence was legally insufficient was ineffective assistance of counsel. The Appellate Division denied petitioner's motion on September 28, 2012, and the Court of Appeals denied his request for leave to appeal on June 6, 2013.

Petitioner commenced this action on May 27, 2014, arguing that he is entitled to a writ of habeas corpus because (1) trial counsel was ineffective, (2) appellate counsel was ineffective, and (3) the People failed to disclose *Brady* material (specifically, Mateo's plea colloquy).

## III. Discussion

### A. Unexhausted and Procedurally Barred Claims

As a threshold matter, respondent contends that certain of petitioner's claims are unexhausted. Specifically, respondent contends that petitioner failed to exhaust his claims that: (1) appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to call Mateo as a trial witness; (2) trial counsel was ineffective for failing to move to dismiss the felony murder count on the ground of legal

insufficiency of the evidence, for failing to object to the charges on reasonable doubt and felony murder, and for failing to object to the trial court's having answered a juror's question; and (3) the People failed to produce *Brady* material.

It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1). This is so because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011).

A claim may be deemed exhausted where further review is procedurally barred under state law. *See id.* ("[B]ecause the exhaustion requirement 'refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law.'") (quoting *Coleman v. Netherland*, 518 U.S. 152, 161 (1996)). However, "[w]here a procedural bar gives rise to exhaustion . . . it also 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Id.* (quoting *Netherland*, 518 U.S. at 162). "For a procedurally defaulted claim to escape this fate, the petitioner

must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (*i.e.*, the petitioner is actually innocent).*"* *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

### 1. Unexhausted Claim

Petitioner did not raise his claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to call Mateo as a trial witness in his second and third motions for a writ of error coram nobis. Accordingly, this claim is unexhausted. However, and unlike the claims discussed below, it is not procedurally defaulted, because petitioner could bring a fourth motion for a writ of error coram nobis.

"[A] district court faced with a habeas petition containing unexhausted claims generally has three options." *Ortiz*, 2011 WL 1331509 at *14. The Court may (1) dismiss the unexhausted claims without prejudice, (2) under limited circumstances, stay the petition and hold it in abeyance while the petitioner returns to state court and exhausts the claims at issue, or (3) if the unexhausted claim is plainly meritless, deny it on the merits. *See id*. Here, the Court finds that petitioner's unexhausted ineffective assistance of appellate counsel claim is plainly meritless and accordingly denies it.

"Pursuant to the well-known two-part test of *Strickland v. Washington* . . . a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably

competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241, (2009)). In this case, the Appellate Division determined, and the Court agrees, that trial counsel's decision not to call Mateo was a legitimate strategic decision, and did not constitute deficient performance.

"Counsel's decision as to whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)(internal quotation omitted). Here, trial counsel could reasonably have concluded that the risks of calling Mateo to the stand outweighed the potential benefits. Mateo's statement to the police implicated petitioner in planning the robbery and procuring and hiding the murder weapon. Trial counsel's decision to avoid having this negative information presented to the jury was a reasonable strategy, as was seeking a missing witness charge against the People with respect to Mateo's absence. Trial counsel was thereby able to undermine Cruz's testimony without introducing to the jurors information suggesting that petitioner was an active participant in the events of the night in question. Accordingly, petitioner cannot satisfy the first prong of *Strickland* with respect to this claim.

Because petitioner's ineffective assistance claim against trial counsel was meritless, appellate counsel cannot have been ineffective for failing to raise it. *See Ortiz*, 2011 WL 1331609,

at *15 ("Given that an appellate attorney need not bring every potential non-frivolous claim in order to meet the *Strickland* performance prong, failure to raise a plainly meritless claim, as here, cannot be ineffective assistance of counsel."). As such, the Court finds petitioner's unexhausted ineffective assistance of appellate counsel claim plainly meritless and it is denied.

### 2. Procedurally Barred Claims

Petitioner's claim that trial counsel was ineffective for (1) failing to move to dismiss the felony murder count on the ground of legal insufficiency of the evidence, (2) failing to object to the charges on reasonable doubt and felony murder, and (3) failing to object to the trial court's having answered a juror's question, and his claim that the People failed to produce *Brady* material were either not raised in his *de novo* appeal or not raised in his application for leave to appeal after having been denied by the Appellate Division. There is no reason petitioner could not have raised these claims on direct appeal, as they were based on the record and therefore available to him at that time. Accordingly, under New York law, further review of these claims is procedurally barred. *See Ortiz*, 2011 WL 1331509, at *7 (explaining that, under New York law, unjustifiable failure to raise a claim on direct appeal forfeits the right to collateral relief).

Petitioner cannot meet the high bar for granting relief on a procedurally defaulted claim. Petitioner has not established cause for his default, and he will not suffer any prejudice as a result of the procedural bar. As discussed below, there is no merit to

petitioner's claims, and they would be denied even were the Court to consider them on the merits.

Petitioner also cannot establish that he is actually innocent of the crime for which he was convicted. "The Supreme Court has explained that the fundamental miscarriage of justice exception is 'extremely rare' and should be applied only in 'the extraordinary cases.'" *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 321-22(1995)). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id*. at 142 (internal quotation omitted). "[A]ctual innocence means factual innocence rather than just legal insufficiency." *Id*. (internal quotation omitted). In this case, as the state courts have found on multiple occasions, there was plainly sufficient evidence, including the testimony of eyewitness Cruz, from which a reasonable juror could have concluded that petitioner was guilty of felony murder.

**B.    The Merits of Petitioner's Claims**

**1.    Standard of Review**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The

question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## 2. Ineffective Assistance of Counsel

Where, as here, the state court has rejected a claim of ineffective assistance of counsel, a "doubly deferential [standard of] judicial review" applies on federal habeas review. *Knowles,* 555 U.S. at 123. Accordingly, to prevail on an claim of ineffective assistance of counsel, petitioner must show that the state court's application of *Strickland* was objectively unreasonable.

Petitioner has argued that trial counsel was ineffective for having failed to (1) move to dismiss the felony murder count on the basis of legal insufficiency of the evidence, (2) object to the trial court's charges on reasonable doubt and the elements of felony murder, (3) object to the trial court's colloquy with a juror in response to that juror's question, and (4) call Mateo as a trial witness. Petitioner has also argued that appellate counsel was ineffective for having failed to assert that trial counsel was ineffective on those same grounds. As discussed above, some of these claims are unexhausted. However, for the sake of judicial

efficiency, and because the claims are inextricably intertwined, the Court has considered each on the merits and finds that petitioner is not entitled to relief.

### a.    Legal Sufficiency of the Evidence

Petitioner argues that trial counsel unreasonably failed to move to dismiss the felony murder count based on legal insufficiency of the evidence. Respondent argues, and the Court agrees, that there is no reasonable possibility such a motion would have been granted.

Under New York law, an individual is guilty of felony murder if "either acting alone or with one or more other persons, he commits or attempts to commit [certain enumerated felonies] and, in the course of and in furtherance of such crime or immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants."  New York Penal Law § 125.25.  In this case, Cruz, who had known petitioner for years and identified him at trial, testified that while petitioner was participating in an attempted robbery or the immediate flight therefrom, Rios, a co-participant, fatally shot McIntyre when McIntyre tried to interfere with their unlawful actitivites.  "[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004); *see also People v. Williams,* 10 A.D.3d 213, 217 (1st Dep't 2004), *aff'd,* 5 N.Y.3d 732, (2005) ("The proof of defendant's guilt,

consisting of an uncorroborated eyewitness identification, was . . . plainly sufficient to support a conviction.").

Trial counsel cannot be faulted for failing to make a motion with no reasonable likelihood of success. Accordingly, petitioner's claim fails to satisfy the *Strickland* standard.

### b. Charge on Reasonable Doubt

At petitioner's trial, the trial court charged the jury as follows: "if you find that the People have proved to your satisfaction and beyond a reasonable doubt each of these elements as I have explained them . . . your verdict *should* be guilty. If you don't find them established, your verdict *should* be not guilty." Docket No. 11-7 at 189 (emphasis added). Petitioner argues that these instructions were incorrect, because New York's Criminal Pattern Jury Instructions on Reasonable doubt use the word "must," rather than the word "should." Trial counsel did not object to the trial court's instruction, which petitioner contends was error.

"[C]ounsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Here, the trial court's instructions "[did] not unfairly characterize the jury's duty under the law." *Manning v. Strack*, 2002 WL 31780175, at *6 (E.D.N.Y. Oct. 11, 2002) (noting that certain pattern jury instructions recommend "that [the] jury be instructed that if it is convinced of

defendant's guilt beyond a reasonable doubt, it should vote to convict") (internal quotation removed). The word "should," as used in this context, properly conveyed to the jury that it was their duty, in the event the People failed to prove guilt beyond a reasonable doubt, to acquit petitioner. *See, e.g., Sanders v. United States*, 2009 WL 2242302, at *4 (E.D.N.Y. July 27, 2009) ("In this case, the context of the jury instruction and its wording make clear that the word 'should' is an imperative instructing the jury to acquit if they determined that the government had not satisfied its burden of proof. There is no indication in the record that the jurors convicted petitioner based on a standard lower than reasonable doubt. Counsel was not ineffective for not objecting to the Court's jury charge and petitioner was not prejudiced by the phrasing."); *see also United States v. Capoccia*, 247 F. App'x 311, 316 (2d Cir. 2007) ("the court's usage on two occasions of the phrase 'should acquit,' rather than 'must acquit,' was not error because 'should' (unlike, for example, 'may') was imperative, not hortatory, and the jury's obligation was also clear from context"). Accordingly, petitioner has not established that trial counsel was ineffective for having failed to object to the trial court's charge on reasonable doubt.

### c. Charge on Elements of Felony Murder

As set forth above, New York law as to felony murder provides that it must have occurred "in the course of *and* in furtherance of [an enumerated felony] or immediate flight therefrom." New York Penal Law § 125.25[3] (emphasis added). At petitioner's trial, the

trial court misstated this standard its initial charge to the jury, replacing the word "and" with the word "or" (*i.e.* "in the course of *or* in furtherance of"), without objection from trial counsel. However, thereafter, the trial court provided the jury with a correct reading of the statute on three separate occasions. Notably, on the last occasion that the trial court misread the statute, it immediately corrected itself, and provided the jury with the appropriate instruction. *See* Docket No. 11-7 at 205-206.

Respondent argues that, even assuming trial counsel was remiss in failing to object to the trial court's initial misstatement, no prejudice resulted, because the trial court corrected its initial erroneous instruction. The Court agrees. Under *Strickland*, to show prejudice, petitioner must demonstrate that "his counsel's unreasonable conduct prejudiced the outcome of his trial, such that our confidence in the outcome is undermined." *Cox v. Donnelly*, 387 F.3d 193, 199 (2d Cir. 2004). Petitioner cannot meet that standard here. Had his counsel objected at the time the trial court gave its initial instruction, the remedy would have been to provide the jury with a corrected instruction, which is precisely what happened anyway. Where an initial error is corrected at the time of trial, there is generally no prejudice under *Strickland*. *See, e.g., Jones v. Greene*, 2007 WL 2089291, at *8 (S.D.N.Y. July 20, 2007) (no prejudice where lawyer misspoke in opening statement but properly summarized the elements of the offense in his closing).

### d.   The Trial Court's Colloquy with a Juror

During jury deliberations in petitioner's trial, the jury requested to see certain information, only some of which had been received in evidence. The trial court conferred with counsel and responded to the jury's request. Directly following this exchange, a juror, in open court, asked the trial court a question about the felony murder count. The trial court repeated its instructions regarding felony murder, then conferred with counsel regarding whether they had any requests. The trial court again instructed the jury with respect to the definition of felony murder, and the juror indicated that his question had been answered. Petitioner argues that the trial court's actions violated New York Criminal Procedure Law § 310.30, which requires the trial court to confer with counsel before responding to a jury question, and that trial counsel was therefore ineffective for not having objected.

As with petitioner's previous argument, he has failed to demonstrate any prejudice arising from the trial court's colloquy with the juror. Trial counsel had an the opportunity to give input into the trial court's response to the juror, and petitioner has not identified any additional information that should have been provided. As such, even assuming trial counsel's decision not to object constituted an error, the corresponding lack of prejudice means that petitioner cannot sustain an ineffective assistance of counsel claim.

### e. Failure to Call Mateo

Petitioner's claim based on trial counsel's failure to call Mateo as a trial witness was analyzed in section I(A)(1) of this

Decision and Order.  For the reasons discussed therein, the Court finds that trial counsel's decision not to call Mateo as a witness as trial was objectively reasonable and cannot form the basis for a claim of ineffective assistance of counsel.

### f.    Performance of Appellate Counsel

Petitioner has argued that appellate counsel was ineffective because he failed to make various claims of ineffective assistance of trial counsel.  For the reasons set forth above, the Court has concluded that trial counsel did not provide ineffective assistance.  It therefore follows that appellate counsel cannot be found ineffective for having failed to make a non-meritorious ineffective assistance of trial counsel claim.  *See Ortiz*, 2011 WL 1331609, at *15 ("Given that an appellate attorney need not bring every potential non-frivolous claim in order to meet the *Strickland* performance prong, failure to raise a plainly meritless claim, as here, cannot be ineffective assistance of counsel.").

### 3.   *Brady* Claim

The final claim set forth in the petition is that the People violated *Brady* by failing to disclose Mateo's plea colloquy.  As discussed above, this claim is procedurally defaulted.  However, even were the Court to consider the merits, petitioner has not shown that any *Brady* violation occurred.

Pursuant to *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Banks v. Dretke*, 540 U.S. 668, 691 (2004) (internal quotation omitted).  However, there is no suppression, and therefore no *Brady* violation, "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence."  *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (internal quotation omitted).

Here, as the Appellate Division found, the record shows that petitioner was fully aware of Mateo's plea colloquy and there was therefore no *Brady* violation.  Specifically, the Appellate Division noted that trial counsel made specific reference to Mateo's plea agreement when she requested a missing witness charge, and the trial court, in granting that request, specifically referenced the fact that Mateo had stated that it was Vargas, and not petitioner, who told Rios to shoot McIntyre.  The Appellate Division's holding was neither contrary to nor an unreasonable application of *Brady*, and petitioner is therefore not entitled to federal habeas relief on this claim.

## IV. Conclusion

For the foregoing reasons, the petition (Docket No. 1) is denied and dismissed.  No certificate of appealability shall issue because petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] . . . [C]ourt was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Fed. R. App. P. 24(a)(1), (4), & (5). The Clerk of the Court is instructed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      Rochester, New York
            October 16, 2017